# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Civil Action No. 19-cv-03087-RM

THE PEOPLE OF THE STATE OF COLORADO,

    Complainant,

v.

YOURAS ZIANKOVICH,

    Respondent.

---

## ORDER OF REMAND

---

Defendant removed this proceeding which was pending before the Presiding Disciplinary Judge (the "PDJ"), Supreme Court of Colorado, alleging subject matter jurisdiction based on federal question and diversity jurisdiction. Upon review of the matter, the Court issued an Order to Show Cause why this case should not be remanded based on the lack of subject matter jurisdiction or *Younger*[1] abstention. (ECF No. 12.) Plaintiff and Defendant each filed a response (ECF Nos. 16-17). Upon consideration of the responses, the court record, and the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

### I.    BACKGROUND

Defendant is an attorney licensed to practice law in New York but practices federal immigration law in Colorado. Defendant is not licensed to practice here. Plaintiff filed this disciplinary proceeding alleging Defendant violated the Colorado Rules of Professional Conduct by, e.g., failing to act with reasonable diligence and promptness in representing his clients and

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

failing to communicate with his clients. Defendant removed the proceeding to this Court, alleging this Court has original jurisdiction over this proceeding. The Court, *sua sponte*, questioned whether it had subject matter jurisdiction and issued its Order to Show Cause (the "OSC"). The parties' responses followed.

II. ANALYSIS

Under 28 U.S.C. § 1441(a) "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant…to the district court of the United States for the district…where such action is pending." "Removal statutes are to be strictly construed…and all doubts are to be resolved against removal." *Fajen v. Foundation Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) (citation omitted). The party invoking federal jurisdiction has the burden of showing that removal is proper. *See Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir. 2007) (citation omitted).

As stated, Defendant contends this Court has original jurisdiction based on federal question and diversity of citizenship, 28 U.S.C. §§ 1331-1332. The OSC and the parties' responses raise the following issues concerning whether this Court has subject matter jurisdiction over this action: (1) whether the Colorado Supreme Court has exclusive jurisdiction; (2) whether the disciplinary proceeding is a "civil action"; (3) whether the state proceeding involves a federal question because it regulates interstate commerce; (4) whether the state claims are completely preempted by the federal rules which govern practice before the immigration authorities; (5) whether there is diversity of citizenship; (6) whether the amount in controversy exceeds $75,000; and (7) whether *Younger* abstention applies. The Court considers these issues below.

### A. "Civil Action"

Defendant contends this is a "quasi-criminal civil action" while Plaintiff contends the courts have found such actions are "quasi-criminal" or "sui generis" but not civil. The Court agrees with Plaintiff.

The Colorado Supreme Court has recognized that disciplinary actions are "quasi-criminal" in nature and "*sui generis*." *See People v. Kanwal*, 321 P.3d 494, 496 (Colo. 2014). This is because "[t]he simple fact that attorney discipline proceedings are quasi-criminal in nature does not mean the full panoply of criminal protections apply, or that the Rules of Criminal Procedure should govern disciplinary proceedings." *In re Fisher*, 202 P.3d 1186, 1199 (Colo. 2009). Instead, the Colorado Supreme Court "follow[s] a largely civil model for the conduct of formal proceedings." *Kanwal*, 321 P.3d at 496. Thus, such proceedings are within the exclusive jurisdiction of the Colorado Supreme Court. *Kanwal*, 321 P.3d at 495. They are not "civil actions" subject to removal within the contemplation of 28 U.S.C. § 1441. *See Alaska Bar Ass'n v. Dickerson*, 240 F. Supp. 732, 734 (D. Alaska 1965) (attorney disciplinary proceeding not "a civil action within contemplation of federal removal statute"); *Supreme Court of Cal. v. Kinney*, No. 3:15-CV-01552 LB, 2015 WL 3413232, at *5 (N.D. Cal. May 27, 2015) (same). On this basis alone, this action is subject to remand.

Nonetheless, for completeness, the Court addresses the issues further. Here, even assuming, *arguendo*, the disciplinary proceeding may be considered a "civil action" under Section 1441, Defendant nonetheless fails to show this matter is within the original jurisdiction of this Court.

### B. Federal Question Jurisdiction

"The district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331. "Under the longstanding well-pleaded complaint rule,...a suit arises under federal law only when the plaintiff's statement of [its] own cause of action shows that it is based upon federal law." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quotation marks and alteration omitted).

Defendant essentially raises two arguments as to why federal question jurisdiction exists. First, Defendant contends federal question jurisdiction exists because Plaintiff is regulating interstate commerce by its disciplinary proceeding. Defendant cites to no legal authority to support this conclusory proposition; therefore, it is rejected.[2]

Next, Defendant relies on the complete preemption doctrine. Under this doctrine, "[a] complaint purporting to rest on state law…can be recharacterized as one 'arising under' federal law if the law governing the complaint is exclusively federal." *Vaden*, 556 U.S. at 61 (emphasis omitted). Here, Defendant contends the conduct Plaintiff complains of arises from his federal practice of immigration law and his authority to do so arises from and is governed by federal law, which authority Defendant likens to a federal license. Defendant relies on *Sperry v. Florida ex rel. Florida Bar*, 373 U.S. 379 (1963) and 8 C.F.R. §§ 292.1(a)(1), 1003.101, 1003.102. The Court is not persuaded.

In *Sperry*, the United States Supreme Court construed a federal patent statute and federal regulations permitting administrative practice by nonlawyers. The *Sperry* Court held that Florida could not enjoin a nonlawyer registered to practice before the United States Patent Office ("USPO") from preparing and prosecuting patent applications and assignments in Florida – an

---

[2] To the extent Defendant is arguing a "substantial question" category of federal jurisdiction, he fails to show this case is within that "special and small category of cases." *See Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014) (To invoke jurisdiction based on a "substantial question of federal law," party must show that a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." (quotation marks and citation omitted)).

activity that would otherwise constitute the practice of law in Florida – because federal law expressly authorized such nonlawyer practice before the USPO. 373 U.S. at 384-385, 404. Defendant appears to be arguing by analogy that Colorado cannot regulate (or discipline) his conduct because he was authorized by federal law to practice before the immigration authorities, e.g., U.S. Citizenship and Immigration Services and the Immigration Court. *Sperry's* holding, however, is inapposite here.

In this case, the Board of Immigration Appeals (the "Board") may impose disciplinary sanctions against attorneys who practice immigration law under the Board's standards. *See* 8 C.F.R. §§ 1003.101 & 1003.102. That discipline may *also* be imposed under Colorado's rules governing the conduct of attorneys, however, does not render them incompatible with federal immigration regulations governing practice before the immigration authorities. Unlike the case in *Sperry*, the Colorado regulations do not conflict with and are not an obstacle to enforcing federal law. Instead, the Colorado rules are consistent with and expressly contemplated by the federal regulations.

Specifically, 8 C.F.R. § 292.1(a)(1) provides that a person "may be represented by…any attorney as defined in 8 C.F.R. 1.2" Under 8 C.F.R. § 1.2, an attorney is defined as "any person who is eligible to practice law in, and is a member in good standing of the bar of, the highest court of any State…and is not under any order suspending, enjoining, restraining, disbarring, or otherwise restricting him or her in the practice of law." *See also* 8 C.F.R. § 1001.1(f) (same). Further, Section 1003.103 explicitly states the Executive Office of Immigration Review disciplinary counsel "shall" file a petition with the Board to suspend immediately from practice before the Board and Immigration Court[3] "any practitioner who has been suspended or disbarred

---

[3] The Department of Homeland Security "may" do the same for practice before it.

by, or while a disciplinary investigation or proceeding is pending has resigned from, the highest court of any State…or who has been placed on an interim suspension pending a final resolution of the underlying disciplinary matter." Thus, the regulations "expressly contemplate[] state regulation of attorneys practicing immigration law in federal courts." *Ziankovich v. Large*, No. 17-CV-02039-CMA-NYW, 2017 WL 6311470, at *4 (D. Colo. Dec. 11, 2017). Therefore, state regulations of an attorney's conduct are not preempted.

In summary, federal question jurisdiction has not been shown under either of Defendant's theories.

### C. Diversity Jurisdiction

Under 28 U.S.C. § 1332 "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States." In the notice of removal, Defendant relied on the citizenship of the *attorneys* who represent Plaintiff. In the OSC, the Court stated it was the citizenship of the *parties* which controlled. Defendant fails to address this in his response, presumably assuming that Plaintiff is a Colorado citizen. But, that is not the case.

"[A] State is not a 'citizen' for purposes of…diversity jurisdiction." *Moor v. Alameda County*, 411 U.S. 693, 717 (1973). Thus, "it is well settled that a suit between a state and a citizen or a corporation of another state is not between citizens of different states, and that the circuit court of the United States has no jurisdiction of it, unless it arises under the constitution, laws, or treaties of the United States." *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894) (reversing with directions to remand to state court). *See also Illinois v. City of Milwaukee, Wis.*, 406 U.S. 91, 97 n.1 (1972) (same). But, the failure to show a lack of diversity

of citizenship does not end the inquiry as there is another jurisdictional obstacle which must be, but has not been, met: the amount in controversy.

Defendant asserts the amount in controversy exceeds $75,000 based on the allegation that his gross receipts from his legal practice in 2018 was $262,160, which allegation he supports with a declaration under 28 U.S.C. § 1746. *See McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) (affidavits and other evidence may be submitted to provide basis for determining amount in controversy). Plaintiff challenges Defendant's assertion that the amount in controversy exceeds $75,000, arguing any loss of income would be a collateral effect that may follow any adjudication. Thus, the Court must determine whether Defendant has shown, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1446(c)(2)(B).

First, the Court must evaluate how the amount is to be determined. Here, Plaintiff seeks an order finding that Defendant engaged in misconduct and, accordingly, disciplining and ordering Defendant to take remedial action; and assessing the costs of the proceeding. Neither party cites legal authority which determines how the evaluation is to be had. Nonetheless, the Court finds that Plaintiff's complaint is comparable to an action seeking declaratory and injunctive relief.

"In cases seeking declaratory and injunctive relief, 'the amount in controversy is measured by the value of the object of the litigation.'" *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). The Tenth Circuit follows the "either viewpoint rule," considering either the value of the suit to the plaintiff or the cost to defendant of the injunctive and declaratory relief as the measure of the amount in controversy. *Id.*; *see also Bad Ass Coffee Co.*

*of Haw. v. Bad Ass Coffee Ltd. P'ship*, 25 F. App'x 738, 743 (10th Cir. 2001) (amount in controversy determined by pecuniary effect an adverse declaration would have on either party to lawsuit).

Under Plaintiff' argument, the pecuniary effect is the amount of the costs which may be assessed, which (even if considered) clearly would not meet the jurisdictional requirement. Under Defendant's argument, the pecuniary effect is the loss of income in the amount of $262,160, relying on his disbarment from the State of New York. But, disbarment, if any, before the PDJ would be from the State of Colorado. And even if Defendant was disbarred from the State of Colorado, any loss of income here would have occurred notwithstanding any disbarment because Defendant declares that he ceased providing all legal services in the State of Colorado (including federal legal services) on October 1, 2018. In other words, Defendant would suffer no loss of income from such disbarment. Finally, to the extent any disbarment here would affect Defendant's license in the State of New York, such effect would be collateral and would not be considered in determining the amount in controversy. "It is well settled in this court that, when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur." *New England Mortgage Security Co. v. Gay*, 145 U.S. 123, 130 (1892); *see also Provident Life & Acc. Ins. Co. v. O'Connor*, 131 F.3d 147 (9th Cir. 1997) (unpublished table decision) ("It is well settled that a party cannot satisfy the amount in controversy requirement by pointing to the possible (or even rather certain) collateral effects of the litigation." (collecting cases)). Thus, under either viewpoint, the amount in controversy has not been met.

### III. CONCLUSION

Based on the foregoing,[4] the Court finds that Defendant fails to meet his burden of showing that subject matter exists. Accordingly, it is **ORDERED**

(1) That the Order to Show Cause (ECF No. 12) is made **ABSOLUTE**;

(2) That this matter is hereby **REMANDED** to the Presiding Disciplinary Judge in the Supreme Court, State of Colorado, from which it was removed; and

(3) That the Clerk shall **CLOSE** this case.

DATED this 19th day of December, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

---

[4] In light of the Court's findings, it need not reach the other issues, e.g., whether it was an "agency action" instead of an action of the Colorado Supreme Court or *Younger* abstention.